**E. ALLEN NICKERSON**
ATTORNEY AT LAW
175 W. White Horse Pike
Berlin, New Jersey 08009
Phone: (856) 768-5103
Fax: (856) 768-5130
ATTORNEY FOR DEFENDANT

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 10-16449-JHW |
| Michael A. Salvatore, Sr. | Adversary No. 10-1679-JHW |
| Debtor | **DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT AND EXHIBITS** |

**E. ALLEN NICKERSON**
ATTORNEY AT LAW
175 W. White Horse Pike
Berlin, New Jersey 08009
Phone: (856) 768-5103
Fax: (856) 768-5130
ATTORNEY FOR DEFENDANT

| | |
|---|---|
| IN RE:<br><br>**MICHAEL A. SALVATORE, SR.**<br><br>Debtor.<br><br>**ALLISON GREEN**<br><br>Plaintiff,<br><br>vs.<br><br>**MICHAEL A. SALVATORE, SR.**<br><br>Defendant. | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY<br>CASE NO. 10-16449-JHW<br><br>CHAPTER 7<br><br>ADVERSARY NO. 10-1679-JHW<br><br>**DEFENDANT'S RESPONSE TO PLANTIFF'S PROPOSED FINDINGS OF FACT AND EXHIBITS** |

Defendant/Debtor, Michael A. Salvatore, Sr. in response to Plaintiff's Proposed Findings of Fact responds as follows:

1-5. Defendant agrees with the facts set forth in plaintiff's submission.

6. Defendant asserts that the defendant sent an advertisement to the plaintiff for home improvement work.

7. Items a through g are admitted. It is denied, however, that the defendant agreed to obtain permits.

8. It is admitted that several meetings did occur. As a result of these meetings the original proposal items were further clarified with notes and additions and were signed off by both parties. As agreed at the time of the meetings, the defendant was not to

secure any permits which is why the proposal did not mention anything about permits or permit fees which would have been added to the cost of the project if that was acceptable to the plaintiff. The plaintiff advised the defendant not to obtain permits.

9. Defendant never participated in any financial matter with the plaintiff.

10. The plaintiff paid this amount in full.

11. The plaintiff did not simply write checks made payable to the defendant at his request. Those checks were issued after the plaintiff made a very detailed inspection of completed work.

12. It is agreed that the defendant was actively involved in all aspects of the work. It should also be pointed out that the plaintiff was actively involved in all aspects of the work and was complimentary of the defendant's work after inspections and issuance of her checks to the defendant.

13. It is agreed that the defendant did not obtain building permits. The advertisement by the defendant as to services to be rendered is always superseded by the Contract itself. This plaintiff knew exactly how to go about obtaining permits and in fact went to the Township herself on at least one occasion and indicated to the defendant that she was trying to keep the cost down by not obtaining permits.

It should be pointed out that homeowners in New Jersey are allowed to obtain their own permits in their own name on their own home for purposes of repairs and remodeling. This plaintiff was acting as her own general contractor and specified that the defendant's role in these home improvements was as set forth in the proposal signed by both parties.

14. Defendant admits that there were no inspections by the local code enforcement office. In order to obtain permits, the defendant would have had to provide certified drawings from a New Jersey licensed architect which was an expense that this plaintiff chose not to incur. The plaintiff would have been able to obtain permits without architectural drawings by using manufacturers drawings of cabinets, etc.

16. This defendant denies that the work done under the home improvement contract was defective. Attached to this response is a Report of Milan Construction Enterprises, LLC dated November 27, 2009 setting forth the observations of Mr. Danny Parikh, a Licensed Professional Engineer and the President of the company.

## CONCLUSIONS OF LAW

Defendant's legal position is that there was an agreement with the plaintiff as set forth in Exhibit 2 of the plaintiff's submissions. That Exhibit sets forth, in the four corners of that document, the proposal for labor and materials to be furnished to the plaintiff at her home. Defendant further asserts that each and every item on that proposal was provided by the defendant's company in a good workman-like manner and that the plaintiff did in fact pay for the labor and materials by numerous checks as set forth in plaintiff's Exhibit 5 which checks were always, without any exception, issued by her after an inspection and discussion with the defendant frequently commenting on the high quality of the defendant's work.

On August 27, 2007 the defendant did in fact send the letter attached to the plaintiff's Exhibits as Exhibit C. That letter was a follow up to certain discussions the defendant had with plaintiff regarding some follow up items to be completed.

In accordance with the Joint Scheduling Order issued by the Court on September 7, 2010, the defendant is submitting the following Exhibits:

1. Exhibit A is a copy of the Zoning Permit that the plaintiff obtained from the Township of Cherry Hill dated May 7, 2007.

2. The defendant is attaching as Exhibit B a set of photos taken by Mr. Danny Parikh, President of Milan Construction Enterprises, LLC during an inspection made at the plaintiff's home as part of the discovery in the State Court action. Mr. Parikh was accompanied by Mr. Salvatore.

## CONCLUSION

It is respectfully submitted that plaintiff's Complaint to determine Non-Disclosure of Debt pursuant to USCA Sec. 523 should be dismissed. The plaintiff will not be able to prove by a preponderance of the evidence that the defendant's acts amounted to "actual fraud" or that the home improvement contract was obtained by "false pretenses" or that the defendant made "false representations" to the plaintiff in order to obtain the contract to make home improvements.

Respectfully submitted,

By:_____
E. ALLEN NICKERSON, ESQ.
Attorney for Michael A. Salvatore, Sr.

# MILAN CONSTRUCTION ENTERPRISES, LLC
210 Route 73, Voorhees, NJ 08043
Ph: 856-745-9676; Fax; 856-768-3369

November 27, 2009

E. Allen Nickerson, esq.
175 West White Horse Pike
Berlin, NJ 08009

RE: 1717 Pleasant Drive, Cherry Hill, NJ (Green v/s Salvatore)

Dear Mr. Nickerson;

As per your request I have prepared following report on the subject matter using my skill from Construction Management experience, Licensed Professional Engineer's knowledge and field experience of different clients with different trade contractors.
This report has been prepared based on the following:
1. National Property Inspections Report dated January 3, 2008
2. List of Incomplete or unsatisfactory work dated September 17, 2007
3. Letter dated October 15, 2007 from Salvatore to Mr. Henry Tyler.
4. My brief visit to the property on October 4, 2009
5. Detailed interview with Mr. Salvatore
6. Three Proposals accepted by both Ms Green and Salvatore General Contractors, Inc. (Proposal date October 26, 2006, Acceptance date November 13, 2006)
7. Cipriani Builders' Proposal (based on visits dated April 3, 2009 and April 6, 2009)
8. Amira Custom Home Improvements Proposal (no date)

KITCHEN RELATED:

It seems that the Contractor and the Owner agreed to keep the kitchen layout close to the original layout with minor modifications as follows:
1. Added cabinets on the wall opposite of exterior wall with window,
2. Added slate counter with necessary support structure
3. Replaced existing outlets with GFI outlets
4. Replace one switch to a dimmer switch.
5. Replace existing lights with recessed lights from existing switches
6. Tore wall and installed new pocket door
7. Install 12 x 12 slate tile blocks selected by the Owner
8. Install Owner purchased appliances and fixtures to existing water, sewer, gas and electric.
9. Install water line for refrigerator.
10. Cover exposed walls with one sided finished plywood stained to match kitchen cabinets

Above work started on November 22, 2006 and kitchen was made operational in late March of 2007. The last check for the most of the payments was made on April 4, 2007. There were few outstanding items left to be completed because of items on order.

Kitchen was being used from late March while Contractor was working on Bathroom Projects. On June 13, 2007 Contractor was paid final amount of $1170.09, including extra work done in the kitchen.

According to Contractor Salvatore, when he completed work, he owed a new glass door to the Owner that was reordered from the cabinet supplier. He also claims that the dimmer switch had some problems and needed replacement and one bathroom fixture was still not available from the Owner. He had delivered kitchen cabinet glass door to the Owner and did not install door or fix dimmer switch because he was not paid extra that was billed on September 12, 2007. According to Owner's check list dated September 17, 2007, Contractor was required to fix certain items. On December 28, 2007, National Property Inspections performed its inspection and issued a report on January 3, 2007. Owner expects Contractor to correct conditions stated in this Report.

It appears that Owner paid almost all money, according to Mr. Salvatore, for the kitchen renovation, operated kitchen for 75 days while Contractor was finishing two bathrooms and did not bring any of these problems to Contractor's attention. Following provides my opinion and recommendations to the Owner's check list items and the items in the inspection report:

- Pocket Door Issue: It is possible that Owner may have hardly used this door during Contractor's presence. However, it is not difficult to correct this condition by the Contractor at its own expense. Cause of the problem may be a nail or screw or a bowed stud or hardware problems, which should be corrected before replacing or repairing damaged door.
- Wall laminate issue: It is my opinion that the Owner should not have paid money to the Contractor with the condition of the cladding as stated in the report. Although, based on my recent visit, it seems like someone tried to re-sand and stain the panels several times causing current conditions. Also, one has to recognize the facts that these panels follow the wall contours. If the existing walls have irregularities, the installed panels may not have smooth joints and require wood trims to hide them. Regardless, the conditions can be corrected by replacing them with new unfinished panels and stain to match or with finished plywood sheets from the cabinet supplier. Since Owner already had paid Contractor, it would seem that satisfactory condition would have existed at the time of final payments. I can just suggest splitting the difference in cost of replacement of these panels between the Owner and the Contractor.
- Electrical Observations: It seems like Owner and Contractor agreed to only certain electrical work. Had they both agree to perform this task with township's permit, none of these would ever occur. Contractor claims Owner and he had discussion about the permit and it was decided that because of very minor changes in appliance locations and kitchen layout, work could be completed without permit. Also, according to Contractor, Owner thought permit would slow down construction process. However, this does not relieve Contractor from his obligation of providing existing outlets or switches in proper and safe conditions when he relocated or reworked on them.

2 | Page

Dedicated refrigerator outlet or outlet at peninsula is required for new work performed under current code. Contractor and Owner had agreed to work with existing layout, including specific existing circuits used for lighting, outlet and appliances. Contractor had provided to the Owner his own licensed electrical contractor to perform service upgrade and resolve some electrical problems in living room for which Owner had paid separate charges to the electrician. Same could have been done for refrigerator outlet circuit and peninsula outlet at extra cost by the electrician. My recommendation would be to have electrician come and verify all electrical work performed by the Contractor and correct all deficiencies at Contractor's expense. Refrigerator dedicated circuit and peninsula outlet should not be part of this task. Also, it should be noted that Township may have allowed this condition (non-dedicated refrigerator outlet and additional outlet at peninsula) as an exception due to existing structure built by old code.

- Gas Shutoff Valve: According to Contractor, this was installed. It is difficult to assess whether it was or was not. However, it is necessary to install accessible shutoff valve. My recommendation would be to have licensed plumber examine all plumbing work performed by the Contractor and make necessary corrections at Contractor's expense.
- Window Trim issue: This is a standard problem in the industry because of pre-existing conditions causing gaps. However, Contractor should have filled all gaps with wood fillers or, depending on gap size, fill with wood rips.
- Tiles issue: The gaps in the grout could occur because of loose grout in isolated spots. This could also occur from the floor vibrations. Simple solution is to fill in the detached grout with new grout. Contractor should do it under a one year warranty period. Regarding uneven tiles, the problems are caused mainly due to type of tiles selected. Most of the time this type of tiles is used in sunroom or patios. There is nothing wrong to use them in the kitchen. However, depending on the condition of tiles (lots of irregularities in this type of tiles), the existing floor, accessibility to the basement and other areas of the house from kitchen, may have effect on its installation. Tiles that are excessively out of level may be replaced with new tiles. However, Owner needs to bring more tiles for Contractor to pick proper tiles having fewer irregularities. As stated earlier, the type of tiles, the floor conditions and accessibility to the lower level plays important part in tile installation. It also affects the operation of existing door to lower level. Usually, tile installers either sand or cut bottom of the door to work with new flooring. This may require Contractor to do the same to this door.
- Slate Counter related: According to Contractor, he had addressed this condition to Owner as soon as he unpacked the counter and inspected it. During my visit I had hard time to recognize the damage to the counter. This type of defect may occur in all natural stones and, if Owner were made aware of this condition by the Contractor, it should have been replaced by the supplier of the counter. Regarding framing of the counter support structure, Contractor should have covered the framing with smooth plywood and painted it with heavy paint coat. This will prevent injuries to knees when sitting on stools.
- Glass Shelves: According to Contractor, he never promised glass shelves as part of original contract. He was helping Owner to order glass shelves to her need. He could

still do the same as long as Owner pays for them. I am sure Owner would not have given all of the money to the Contractor if glass shelves were part of the Contract.
- Missing or damaged trims: There should be no excuse for these items by the Contractor. They should be fixed or replaced.
- Proposals by the other two Contractors: These proposals do not state anything about fixing of Problems based on Owner's check list or the National Property Inspections report. Cippriani Builders had taken Licensed Plumber and Electrician and performed visual inspection. A good plumber and electrician should not have any difficulties to identify what corrections are needed. Because of the type of tiles selected by the Owner, redoing complete flooring with the same tiles may not eliminate problems. These proposals merely reflect each contractor's cost of redoing entire project from scratch. Their proposals do not reflect the original condition of the kitchen when Salvatore began working on these projects. It also does not reflect what transpired between Owner and Salvatore in terms of the extent of work needed by the Owner, use of existing electrical and plumbing, Owners selections of the installed items supplied by the Owner and condition as well as method of acceptance of work at the final payments. As I stated earlier, both parties should have gone for the Township permit. Obviously, Contractor cannot apply for the permit without drawings from the Owner's Architect and Owner cannot apply for the permit unless she is willing to provide her own drawings and take responsibility for all work to be done.

BATHROOM RELATED:

Based on the check list and Inspection reports, I offer following comments and recommendations:
- Have HVAC Contractor come and correct duct termination, so that Contractor can properly patch and sand damaged wall
- Replace and/or repair trims
- According to Contractor the vanity fixture provided by the Owner was already installed and working. He claims that the fixture bought by the Owner was a floor model and may have wear and tear to it. He further claims that Owner may have broken some part at the time of placing some missing bulbs. During my visit, I had observed fixture being imbalanced and hanging sideways. It is very difficult to believe that Contractor was fully paid with faulty installation that is so obvious.
- According to Contractor, there was still one light fixture remaining to be installed in upstairs bathroom. During my visit, I had observed a two bulb temporary light fixture hanging from the ceiling. I did indicate to the Contractor that he should have installed a simple light fixture until Owner supplied new fixture. Also, it seems strange that light fixture was not obtained by the Owner while Contractor was working and accepted this type of temporary hanging light.
- For the upstairs bathroom, Contractor was contracted to replace bath tub and replace trim kits for the shower. He did not work on existing shower head pipe from the wall. Obviously, the condition at shower head represents existing plumbing work and would be considered as extra work for the Contractor. It may

require cutting and patching wall at the showerhead to bring the escutcheon plate flush to the wall.

- Detached sink plumbing in upstairs bathroom: This is another area where work was accepted and payment was made to the Contractor. Normally, anyone getting this type of work done would run the faucet to see if it is working or not. If the pipes were not connected, water would have come out on the floor and everyone would have known the problem. I cannot determine whom to make responsible for this. Regardless of particular's fault, these connections are simple and licensed plumber can finish them while he/she fixes other problems.
- Downstairs bath related: Leaks in the sink should be fixed as of the warranty by the Contractor. Concern on the shower base should be addressed after getting installation instructions from the manufacturer. If it is determined that faulty installation was performed, Contractor must dismantle shower and install it back in presence of licensed plumber or else, let licensed plumber reinstall it.
- Tiles and tile base: It is very important to recognize the facts that the tiles installed on existing floors and walls depend lot on the existing floor/wall conditions. A wavy wall could make wavy tile base. Installation of cement boards for the tile sub-base follows the same contour as the existing floor. This can also result into uneven tile flooring. The tiles that are grossly out of level may be corrected by gouging the underlayment to further inset the unleveled tile. Any crooked tile base in vertical direction should be corrected by proper cuts and reinstallation.
- Glass shelf: According to Contractor, he never promised glass shelves as part of original contract. He was helping Owner to order glass shelves to her need. He could still do the same as long as Owner pays for them. I am sure Owner would not have given all of the money to the Contractor if glass shelves were part of the Contract.

GENERAL RECOMMENDATION: Arrange for the licensed electrician and plumber to identify problems and determine cost of fixing them. Contractor should be able to send his own plumber and electrician as long as they are licensed.

I hope I have covered all areas of concerns in this matter. Should you need further details, please feel free to contact me.

Sincerely,

Danny parikh, P.E.
President,
Milan Construction Enterprises, LLC

# SCHEDULE OF DEFENDANT'S EXHIBITS

| | |
|---|---|
| Exhibit A | Copy of Cherry Hill Township Zoning Permit |
| Exhibit B | Photos of improvements to plaintiff's home: |
| B1 | Upstairs bathroom |
| B2 | Upstairs bathroom |
| B3 | Upstairs bathroom |
| B4 | Upstairs bathroom |
| B5 | Kitchen island |
| B6 | Missing glass door |
| B7 | Missing glass door |
| B8 | Damaged wall panels |
| B9 | Damaged wall panels |
| B10 | Damaged wall panel |
| B11 | Damaged wall panel |
| B12 | Kitchen floor as seen from basement stairs |
| B13 | Kitchen sink with drains off |
| B14 | Kitchen sink with drain on |

| | |
|---|---|
| B15 | Existing ceiling in living room |
| B16 | Downstairs bath |
| B17 | Downstairs bath |
| B18 | Downstairs bath |
| B19 | Downstairs bath |
| B20 | Downstairs bath |
| B21 | Downstairs bath |
| B22 | Downstairs bath |